UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at LONDON)

| | |
|---|---|
| RAFAEL D. FOSTER,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, ET AL.,<br><br>    Defendants. | Civil Action No. 6: 23-CV-179-CHB<br><br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

Federal inmate Rafael D. Foster alleges that, while he was incarcerated at the United States Penitentiary ("USP") McCreary in Pine Knot, Kentucky, multiple prison employees assaulted him. [R. 1]. Foster filed the present *pro se* civil action asserting a Federal Tort Claims Act ("FTCA") claim against the United States of America and related claims against two USP McCreary employees, "Lieutenant Toney" and "J. Nichols." *Id.*

The United States moved to dismiss Foster's FTCA claim, arguing that it is immune from suit because the alleged assault "could not have been conducted within the scope and course of the employees' employment with the" Federal Bureau of Prisons ("BOP"). [R. 18-1, p. 5]. Defendant Toney also filed a motion to dismiss, arguing that Foster's claims against him are time barred and otherwise unavailing. [R. 27]. Despite Foster's failure to respond to these motions, there remain outstanding questions of fact regarding whether the alleged assault occurred within the scope of the prison staff members' employment and whether Foster's claims against Defendant Toney are indeed time barred, as explained in more detail below. Thus, while the Court will grant Defendant

Toney's motion to the limited extent that he seeks dismissal of two of Foster's claims, it will otherwise deny the pending motions.

I.

In May of 2023, Foster filed a short letter with this Court alleging that, while he was confined at USP McCreary, prison employees assaulted him. *See Foster v. BOP*, No. 6:23-cv-083-CHB, at R. 1 (E.D. Ky. 2023). Foster requested a "prisoner complaint form for Kentucky" and indicated that he was trying to file a lawsuit. *Id.* at R. 1, p. 1. Foster attached a brief statement, as well as the BOP's response to an administrative tort claim he had filed regarding the matter. *See id.* at R. 1-1, pp. 1–3.

While the Clerk's Office docketed Foster's letter as a new civil action for administrative purposes, the Court noted that Foster's submission did not constitute a complaint and that he neither paid the required filing and administrative fees nor properly sought pauper status. *See id.* at R. 4. Therefore, the Court dismissed the action without prejudice, though it sent Foster the forms needed to file a new civil action regarding his claims. *Id.*

In October of 2023, Foster filed the present case. [R. 1]. Foster alleges that, on the evening of March 9, 2022, he was involved in an incident in his housing unit at USP McCreary. *Id.* at 2; [R. 1-1, p. 1]. Foster alleges that he was then escorted to the medical department where staff took photographs of him which showed "nothing was wrong . . . from [the] incident." [R. 1, p. 2]. Foster then alleges that he was sent to the special housing unit ("SHU") where Defendant Toney and other correctional officers approached him and asked him if he had tried to hit a staff member with a crutch earlier in the evening, which he denied. *Id.* According to Foster, Defendant Toney then said that he and the other staff members were about to "beat [his] ass." *Id.*

2

Foster alleges that the staff members slammed him to the ground, kicked him in the face, and struck him with closed fists. *Id.* at 3. Foster then alleges that the staff members picked him up, dragged him to a multi-purpose room, threw him on a dirty mat on the floor, stripped him of his clothes, and continued to beat him. *Id.* Foster alleges that the staff members then placed him in a restraint chair, moved him to a cell, and kept beating him. *Id.* Foster then says that the correctional officers "made me lay on my back on the bunk and ke[pt] coming in every 30 mins. until 5 am and beat on me." *Id.* Foster alleges that Defendant Toney and other correctional officers, including Nichols, "came in and took a picture of me and said [']smile for the cam[e]ra 'bitch,'['] while . . . trying to brake [sic] my legs by pulling on the leg restraints." *Id.*; *see also* [R. 1-1, p. 1]. Foster then says, "After hours of them torturing me, the nurse came on her shift and [saw] my injuries and asked the [correctional officers] to remove the restraints." [R. 1, p. 3]. Foster then returned to the medical department. *Id.*

Foster filed an administrative tort claim with the BOP. [R. 1-1, pp. 2–3]. In its response letter, the BOP painted a different picture of what occurred on the evening in question, saying:

> An investigation of your claim revealed on March 9, 2022, at approximately 6:15 p.m., you were involved in an altercation with six other inmates in the common area of 3A housing unit. When staff became aware of . . . the incident, they radioed for assistance. All inmates were given an order to cease their combative actions, however, there was resistance and staff deployed OC. Once the disruptive behavior ceased, all inmates were separated, taken to health services to be decontaminated and medically assessed.
>
> During the medical assessment you alleged no injuries, and your vitals were within normal limits. Upon escort to the special housing unit (SHU), you began to resist and threaten staff. Staff positioned you on the ground to gain control and placed you in ambulatory restraints. Although you assert staff were kicking and punching you while you were placed in alternate clothing, upon reviewing the video, there is no evidence to support your allegations.

*Id.* That said, the letter described injuries Foster sustained, including but not limited to a swollen left eye that was tender to the touch, a swollen lip, an oblong bruise near his right rib, and redness

3

and swelling in his eyes. *See id.* at 3. The letter then noted that, in April of 2022, Foster was transferred from USP McCreary to USP Beaumont. *Id.* Ultimately, the BOP denied Foster's claim, though it explained to Foster that "[i]f you are dissatisfied with this determination, you are entitled to bring an action in the appropriate United States district court within six months from the date of the mailing of this determination." *Id.*

Foster then filed this civil action, and he is indeed pursuing a FTCA claim against the United States. *Id.* at 1; [R. 1-1, pp. 2–3]. Foster also lists Toney and Nichols as Defendants and claims that they committed assault, battery, and intentional infliction of emotional distress. [R. 1, p. 4]. Foster also claims that Defendants Toney and Nichols failed to follow certain prison policies and program statements related to the use of force/restraints and the maintenance of a safe environment, *id.*, and he later says that "staff are using unnecessary use of force and cruel and unusual punishment," [R. 1-1 at 1], which the Court broadly construes as Eighth Amendment excessive force claims against the defendants.

In addition to bringing an administrative tort claim, Foster indicates on his complaint form that he pursued other administrative remedies with the BOP, albeit to no avail. [R. 1, pp. 4, 6]. Indeed, Foster says, "I failed [sic] a BP8 before I left McCreary but they didn't go threw [sic] with it. Maybe didn't turn it in because of me being in the SHU/transfering [sic]. They never told me anything about it when I got to this [new] prison." *Id.* at 6. Foster also claims that he appealed the matter administratively but was told he "was failing [sic] under the Wrong Act." *Id.* Foster then indicates that there were no more steps in the grievance process available to him. *Id.* For relief, Foster is seeking money damages. *Id.* at 8.

After this Court screened Foster's complaint pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2) and allowed him to proceed with his claims, [R. 8], the United States filed a motion to

4

dismiss, arguing that it is immune from suit because the conduct alleged in Foster's complaint "could not have been conducted within the scope and course of the employees' employment with the BOP." [R. 18-1]. Defendant Toney also filed a motion to dismiss, and he argues: (a) Foster's assault and battery claims are barred by a one-year statute of limitations; (b) Foster fails to state a claim for intentional infliction of emotional distress; and (c) the BOP's policy statements do not create a private cause of action. [R. 27]. Foster, who is in the process of transitioning out of federal prison and into a halfway house in Saint Louis, Missouri, [R. 21], did not respond to the pending motions, and his time to do so has passed. [R. 28]. Thus, the motions are ripe for a decision.

II.

*A. The United States' Motion to Dismiss, [R. 18]*

As an initial matter, this Court has made it clear that "'[a] motion to dismiss on the basis that plaintiff's claim is barred by sovereign immunity is a motion to dismiss for lack of subject matter jurisdiction.'" *B.A. v. United States*, No. 5:21-cv-106-DCR, 2021 WL 4768248, at *1 (E.D. Ky. Oct. 12, 2021) (quoting *Sawyers v. United States*, No. 3:15-cv-873-GNS-DW, 2016 WL 7223430, at *1 (W.D. Ky. Dec. 12, 2016). In deciding whether subject matter jurisdiction exists, this Court "can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction," and "[t]he burden is on the plaintiff to prove that jurisdiction exists." *B.A.*, 2021 WL 4768248, at *2 (citations and quotation marks omitted).

Here, the United States argues that it is protected by sovereign immunity. [R. 18-1, pp. 4–9]. The FTCA, however, ultimately contains a provision that waives sovereign immunity for six intentional torts, including assault and battery, committed by law enforcement officers acting within the scope of their employment. *Millbrook v. United States*, 569 U.S. 50, 53 (2013) (citing 28 U.S.C. § 2680(h)). In this case, the United States "does not contest that the USP McCreary

5

employees were law enforcement officers for purposes of Section 2680(h)." [R. 18-1 at 6]. Thus, the issue is whether the employees were acting within the scope of their employment during the alleged events.

The Court applies the law of the state where the act occurred in deciding whether it is within the scope of one's employment. 28 U.S.C. § 1346(b)(1). As this Court has explained:

> Under Kentucky law, "the focus is consistently on the purpose or motive of the employee in determining whether he or she was acting within the scope of employment." *O'Bryan v. Holy See*, 556 F.3d 361, 383 (6th Cir. 2009) (quoting *Papa John's Int'l v. McCoy*, 244 S.W.3d 44, 56 (Ky. 2008)). An intentional tort committed by the employee may be within the scope of his or her employment if "its purpose, however misguided, is wholly or in part to further the master's business." *Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005). "[T]o be within the scope of employment, the conduct must be of the same general nature as that authorized or incidental to the conduct authorized." *Osborne v. Payne*, 31 S.W.3d 911, 915 (Ky. 2000).

*B.A.*, 2021 WL 4768248, at *2.

The United States argues that the USP McCreary employees were not acting within the scope of their employment, saying, among other things, that "[i]t is axiomatic that a Bureau of Prisons' employee's job duties do not include the battery or assault of an inmate." [R. 18-1, p. 8]. However, at this early stage in the litigation, it is difficult to discern the prison employees' precise purpose or motive for engaging in the alleged conduct. On the one hand, Foster himself suggests the employees thought he tried to hit their colleague with a crutch, prompting them to assault him in retaliation. [R. 1, pp. 2–3]. Such retaliatory conduct could be considered outside the scope of the individuals' employment. *See Robinson v. United States*, No. 6:21-cv-204-REW, 2024 WL 1219716, at *10 (E.D. Ky. Mar. 21, 2024) (explaining, on the facts of that case, that certain retaliatory conduct, "if true, in no way furthers the BOP's missions or functions"). On the other hand, Foster attaches to his complaint the BOP's response to his administrative tort claim, and that document paints a different picture of the alleged events; indeed, the BOP suggests that Foster

6

"began to resist and threaten staff," prompting staff to position him on the ground so they could place him in ambulatory restraints and, thus, gain control of him. [R. 1-1, p. 2]. This use of force could be considered within the scope of the staff's employment. *See Robinson*, 2024 WL 1219716, at *10 (recognizing that "when a correctional officer attempts to control a non-compliant inmate," the force used "is more likely to be of the same general nature as [the conduct] authorized or incidental to the conduct authorized. Thus, not every use of excessive force by an officer, even when characterized as an assault, will necessarily fall outside the scope of the officer's employment.") (citations and quotation marks omitted).

Given the conflicting accounts of what occurred, and the limited record before the Court, it would be premature to grant the United States' motion to dismiss at this time. Again, the prison employees' "purpose or motive in engaging in the conduct is critical" in deciding whether they were acting within the scope of their employment. *Robinson*, 2024 WL 1219716, at *10. Since the resolution of this question involves "weigh[ing] evidence," *B.A.*, 2021 WL 4768248, at *2, and making a "factual finding" regarding the employees' intent, *Rudd v. Untied States*, No. 5:22-cv-201-GFVT, 2023 WL 4936671, at *3 (E.D. Aug. 2, 2023), the Court would benefit from a more developed record. Therefore, the Court will deny the United States' motion without prejudice to its right to reassert its arguments at the appropriate time.

### B. Defendant Toney's Motion to Dismiss, [R. 27]

Defendant Toney also filed a motion to dismiss, and he argues: (a) Foster's assault and battery claims are time barred; (b) Foster fails to state a claim for intentional infliction of emotional distress; and (c) the BOP's policy statements do not create a private cause of action. [R. 27].

The Court will first grant Defendant Toney's motion to the extent that he seeks dismissal of Foster's intentional infliction of emotional distress claim against him. In Kentucky, this claim

"is known as the tort of outrage and is considered a 'gap-filler.'" *Delarosa v. United States*, No. 5:22-cv-116-DCR, 2022 WL 4280292, at *4 (E.D. Ky. Sept. 15, 2022) (quoting *Banks v. Fritsch*, 39 S.W.3d 474, 481 (Ky. Ct. App. 2001)).  Therefore, "[w]here the alleged 'conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie.'" *Delarosa*, 2022 WL 4280292, at *4 (quoting *Banks*, 39 S.W.3d at 481).  Since Foster's allegations against Defendant Toney "are more properly categorized under other torts for which recovery of emotional distress is allowed," *Delarosa*, 2022 WL 4280292, at *4, his intentional infliction of emotional distress claim is subject to dismissal.

To the extent that Foster is attempting to assert a claim directly under the BOP's policy or program statements, the Court will dismiss that claim as well.  That is because the BOP's policy and program statements, on their own, do not give rise to a private cause of action. *See Christensen v. United States*, 2013 WL 4521040, at *2 (E.D. Ky. Aug. 26, 2013).  Thus, any claim that Foster is trying to assert under a BOP policy or program statement "fails as a matter of law." *Id.* at *2.

This leaves Foster's assault and battery claims, as well as his corresponding Eighth Amendment excessive force claims.[1]  Defendant Toney argues that Foster's claims are time barred. [R. 27, pp. 1–2].  Defendant Toney reasons that Foster's claims would have accrued on March 9, 2022, when the alleged incident occurred. *Id.* at 2.  And since Foster's claims are subject to a one-

---

[1] Again, Foster claims that "staff are using unnecessary use of force and cruel and unusual punishment" [R. 1-1 at 1], which the Court broadly construes as Eighth Amendment excessive force claims brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  While there may be questions about the viability of such claims, *see, e.g., Brown v. Federal Bureau of Prisons*, No. 6:22-cv-097-DCR, 2023 WL 3934674, at *2-3 (E.D. Ky. June 9, 2023), those arguments are not presently before the Court.

year statute of limitations, *see Boswell v. United States*, No. 7:23-cv-066-KKC, 2024 WL 140431, at *3 (E.D. Ky. Jan. 12, 2024), Defendant Toney argues that Foster had to bring his claims on or before March 9, 2023. [R. 27 p. 2]. Foster, however, did not initiate this specific civil action until October of 2023, and, thus, Defendant Toney argues that this matter is time barred. *Id.*

That said, there are multiple issues that complicate the timeliness question. For example, the statute of limitations for Foster's claims would have been tolled while he exhausted his administrative remedies. *See Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012) (citing *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000)). Foster certainly alleges in his complaint that, in addition to bringing an administrative tort claim, he pursued other administrative remedies with the BOP, albeit to no avail. [R. 1, pp. 4, 6]. However, it is not clear from Foster's complaint exactly how much time should be tolled while he was exhausting, or attempting to exhaust, his administrative remedies. And given the limited record before the Court, including the lack of prison administrative remedy generalized retrieval records, the Court cannot otherwise determine the length of the relevant tolling period.

Moreover, in evaluating the timeliness of Foster's claims, the parties may eventually want to address the relevance of Foster's initial letter to this Court, which was docketed back in May of 2023 and indicated that he was trying to file a lawsuit. *See Foster*, No. 6:23-cv-083-CHB, at R. 1. The parties may also want to address whether Foster's transfer from USP McCreary to USP Beaumont in April of 2022, shortly after the alleged events, impacts the timeliness issue. To date, neither party has addressed these questions and without briefing on these issues and a more developed record, the Court cannot determine whether Foster's claims are timely.

III.

In light of the foregoing analysis, it is **ORDERED** as follows:

1. The United States' motion to dismiss [**R. 18**] is **DENIED WITHOUT PREJUDICE** to its right to reassert its arguments on a more developed, post-discovery record.

2. Defendant Toney's motion to dismiss [**R. 27**] is **GRANTED** in part and **DENIED** in part.  Defendant Toney's motion is **GRANTED** to the limited extent that the Court **DISMISSES**, **WITH PREJUDICE**, Foster's intentional infliction of emotional distress claim, as well as any claim Foster is trying to assert under a BOP policy or program statement.  However, Defendant Toney's motion is **DENIED WITHOUT PREJUDICE** in all other respects.  Like the United States, Defendant Toney may reassert his arguments on a more developed, post-discovery record.

3. Pursuant to 28 U.S.C. § 636(b), this matter is **REFERRED** to a United States Magistrate Judge to conduct further pretrial proceedings, including overseeing discovery and setting an efficient schedule for plenary dispositive motions.

4. The Clerk's Office is **DIRECTED** to assign this matter to a United States Magistrate Judge by random draw.

5. The Clerk's Office is **DIRECTED** to send two copies of this Order to Foster—one to his address of record, [R. 21], and another to the following address:

    RRM Saint Louis
    Residential Reentry Office
    1222 Spruce St., Ste. 6.101
    St. Louis, Missouri  63101

    The latter address comes from the BOP's publicly available records.  *See* BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last visited July 17, 2024).

This the 17th day of July, 2024.

                                                CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

11